## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MARQUIST EVANS

Case No. 24-CR-298

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

On September 2, 2025, this Court denied Defendant's motion to dismiss the indictment, *see* [55]. This Memorandum Opinion and Order constitutes the Court's written findings and conclusions in support of the denial.

## I. Factual Background

On July 29, 2024, a grand jury indicted Defendant Marquist Evans, who had previously been convicted of a felony, for unlawful possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and for unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1).[1] *See* [6], [8]. On April 14, 2025, he moved to dismiss the entire indictment on Second Amendment grounds, arguing that § 922(g)(1) and § 922(o)(1) remain unconstitutional as applied to the facts of this case, [34]. The

---

[1] For purposes of deciding Defendant's motion, this Court assumes that the indictment's factual allegations are true and views "all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also* Fed. R. Crim. P. 12(b)(1) (a defendant "may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial on the merits").

Court denied the motion on September 2, 2025, [55], and this Memorandum Opinion and Order constitutes the Court's findings and conclusions in support of that ruling.

## II.   Discussion & Analysis

The Second Amendment provides that, a "well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Yet, § 922(g)(1) makes it unlawful for any "person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). And § 922(o)(1) makes it "unlawful for any person to transfer or possess a machinegun," defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," including "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 18 U.S.C. § 922(o)(1); 26 U.S.C. § 5845(b).

### A.   The Impact of *Bruen*

Courts, including the Supreme Court, have long upheld statutory restrictions, like 18 U.S.C. § 922(g), on felons' possession of firearms, and like § 922(o), on

individuals' possession of machineguns. Mr. Evans, like many other defendants recently, argues that *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), changed the landscape and now makes such restrictions unconstitutional. *See* [34]. But both the Supreme Court and the Seventh Circuit have held that *Bruen* does not disturb the Supreme Court's prior decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), affirming longstanding prohibitions on the possession of firearms by felons and the possession of machineguns. *See United States v. Rahimi*, 602 U.S. 680, 699 (2024); *United States v. Gay*, 98 F.4th 832, 846 (7th Cir. 2024).

Indeed, in deciding *Bruen*, several justices affirmed these limitations. *See Bruen,* 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80–81 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing statement in *Heller* about the propriety of "longstanding prohibitions on the possession of firearms by felons")*; see also id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (agreeing with Justice Kavanaugh that the Court's decision in *Bruen* casts "no doubt" on *Heller*'s prohibition of firearms possession by felons).

The Court in *Bruen* did not mention § 922(g)(1) or § 922(o)(1), let alone invalidate the statutes. Rather, *Bruen* considered only the applicable framework for

assessing challenges to firearm regulations under the Second Amendment, rejecting the "two-part approach" that had been developed by some federal courts of appeals in evaluating such challenges in favor of one that "centers on the constitutional text and history." 597 U.S. at 19–25. Even under the approach set out in *Bruen* however, Defendant's challenges to the relevant statutes fail, as explained below.

### B. Section 922(g)(1) Remains Constitutional Under *Bruen*

#### 1. Controlling Case Law Confirms § 922(g)(1)'s Constitutionality

Binding precedent forecloses any facial invalidation of § 922(g)(1) under the Second Amendment.[2] As the Seventh Circuit held in *United States v. Gay*, such an "argument is hard to square with *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)," which affirmed "that the Second Amendment creates personal rights" and "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." 98 F.4th 843 (7th Cir. 2024). Indeed, in *McDonald v. Chicago*, the Supreme Court again reassured readers that all of the reservations and provisos in *Heller*, including the "prohibitions on the possession of firearms by felons," remain valid. 561 U.S. 742, 786 (2010) (plurality opinion). If any doubt remained about

---

[2] As part of today's ruling, this Court assumes, for the sake of the motion, that convicted felons constitute part of the "people" under the plain text of the Second Amendment. *See United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *6 (N.D. Ill. Dec. 28, 2023) (The "plain text of the Second Amendment" provides "no reason to think that the word 'people' does not cover, on its face, all persons—including a person convicted of a felony."); *United States v. Duarte*, 137 F.4th 743, 755 (9th Cir. 2025) ("Duarte's status as a felon does not remove him from the ambit of the Second Amendment; he is one of 'the people' who enjoys Second Amendment rights.").

*Heller*'s endorsement of § 922(g)(1)'s constitutionality post-*Bruen*, the Seventh Circuit resolved such uncertainty in *Gay*.

Indeed, two years after *Bruen*, the Supreme Court again endorsed the presumptive constitutionality of a prohibition on felons possessing firearms in *United States v. Rahimi*. 602 U.S. 680, 699 (2024) ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"). As numerous courts have observed, *Rahimi* reinforces the conclusion that § 922(g)(1) remains consistent with the Second Amendment. *See, e.g., United States v. Castillo*, No. 23 CR 113, 2025 WL 92565, at *4 (N.D. Ill. Jan. 14, 2025) ("The *Gay* Court wrote that the Supreme Court 'pointedly stated that longstanding prohibitions on the possession of firearms by felons are valid.' *Rahimi* made the same point."); *United States v. Young*, No. 23-10464, 2024 WL 3466607, at *9 (11th Cir. July 19, 2024), *cert. denied sub nom. Young v. United States*, 145 S. Ct. 1097, 220 L. Ed. 2d 405 (2025) (observing that, in *Rahimi*, the Court once again declared that the prohibition on the possession of firearms by felons remains "presumptively lawful"); *United States v. Philpot*, No. 23-3368, 2024 WL 3429177, at *7 n.2 (6th Cir. July 16, 2024) (observing that, in *Rahimi*, the Supreme Court endorsed § 922(g)'s constitutionality).

Further bolstering the notion that § 922(g)(1) remains constitutional post-*Bruen*, the Supreme Court also vacated the Third Circuit's decision in *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96 (3d Cir. 2023), which found § 922(g)(1)

5

unconstitutional as applied to a defendant whose criminal record included just a decades-old non-violent offense, and remanded the matter for further consideration in light of *Rahimi*. *See Garland v. Range*, 144 S.Ct. 2706 (2024).

In short, as *Rahimi* and *Gay* and numerous other cases make clear, *Bruen* merely alters the relevant test for determining the scope of the Second Amendment, but leaves intact controlling case law upholding the constitutionality of § 922(g)(1). *See Gay,* 98 F.4th 843; *Rahimi*, 602 U.S. at 699.

### 2. Historical Analysis Confirms § 922(g)(1)'s Constitutionality

Prior to *Gay*, the Seventh Circuit declined to rule on the constitutionality of § 922(g)(1) under the *Bruen* standard, pending a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" by the district court. *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023); *see also United States v. Jones*, No. 23-2459, 2024 WL 1427024, at *2 (7th Cir. Apr. 3, 2024) (acknowledging that "the historical assessment on the constitutionality" of § 922(g)(1) under *Bruen* remained "inconclusive" after *Atkinson)*. Given *Gay*'s more recent (and binding) analysis of Supreme Court precedent, however, an additional review of the historical evidence by this Court now appears unnecessary in this case.

Nevertheless, to the degree a historical analysis by this Court may be necessary even in a post-*Gay* world, this Court finds that the Government has presented historical evidence (not factually disputed by the parties) and carried its

burden of answering the questions presented by *Atkinson*.[3] *See* [41] at 34–52. Based upon the record here, this Court adopts the well-reasoned historical review and legal analysis of Judge Wood in her dissent in *Atkinson*, 70 F.4th at 1025 (7th Cir. 2023) ("My own assessment of the materials that now govern Second Amendment questions per *Bruen* convinces me that the categorical prohibition created by section 922(g)(1) passes muster under the Constitution.").[4]

---

[3] In *Atkinson*, the Seventh Circuit listed five questions to "help focus the proper analysis" in determining whether the statute is "consistent with this Nation's historical tradition of firearm regulation" under *Bruen*. 70 F.4th at 1020, 1024–25. Nonetheless, it acknowledged that any trial court's historical analysis would "no doubt yield some measure of indeterminacy" and that, prior to receiving additional Supreme Court guidance, the courts would "have to give the best answer available" on whether the Government met its historical-tradition burden. *Id.* at 1024. The Government has done so here, and given the absence of factual disputes by the parties, no evidentiary hearing was required—nor did either party request one. *United States v. Agee*, No. 21-CR-00350-1, 2023 WL 6443924, at *6–7 (N.D. Ill. Oct. 3, 2023) ("Put another way, by not otherwise refuting the particular laws, treatises, or academic articles," the defendant "implicitly accepts" that the Government has "presented them accurately" and thus "no evidentiary hearing is needed in this particular case" where a defendant "mounts no counterattack on the accuracy of the sources.").

[4] Likewise, this Court incorporates by reference both the historical review and interpretation of Supreme Court precedent that has arisen from other persuasive authorities, each upholding the constitutionality of § 922(g)(1). *See, e.g., United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson."); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."); *United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) (Nothing in *Bruen* "reflects a retreat from the Court's earlier statement in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that 'longstanding prohibitions on the possession of firearms by felons and the mentally ill' are 'presumptively lawful.'"); *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."); *United States v. Dubois*, 94 F.4th 1284, 1292–93 (11th Cir. 2024) ("The Supreme Court left no doubt that it viewed its decision as a faithful application of *Heller*, not a departure from it," confirming "that *Heller* correctly 'relied on the historical understanding of the Amendment to demark the limits on the exercise of that right.'"); *United States v. Phillips*, No. 22-CR-0596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) (The "historical analogues provided by the

### 3. Defendant's As-Applied Challenge Fails

Mr. Evans' as-applied challenge to § 922(g)(1) also fails. Initially, such a challenge fails at the outset because the historical evidence obviates the need for any case-by-case examination of as-applied challenges to the statute. *See, e.g., United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) ("Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."); *see also Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting) (suggesting that enabling individuals to seek to establish a case-specific exemption from a generally applicable criminal law would create "an arbitrary patchwork of decisions—as far from the rule of law as one could image"); *see also United States v. Phillips*, No. 22-CR-0596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) ("Lastly, to the extent Phillips challenges the felon dispossession statute, as applied to him, that challenge fails. Like the defendant in *Atkinson*, Phillips fails to provide 'much historical basis for individualized assessments' or carveouts between 'individuals who committed violent versus non-violent crimes' for § 922(g)(1) purposes.") (citing *Atkinson*, 70 F.4th at 1023); *United States v. Duarte*, 137 F.4th 743, 761 (9th Cir. 2025) ("our historical tradition of categorically disarming those whom the legislature determines to represent a 'special danger of misuse' also supports the application of § 922(g)(1) to felons, like Duarte, who assert that their felonies were non-violent"); *id.* at 761

---

government support a legislative authority to disarm persons convicted of felonies, regardless of whether the conviction involved a use (or attempted use) of force").

("History does not require 'felony-by-felony litigation' to support the application of § 922(g)(1) to all felons.") (citing *Atkinson*, 70 F.4th at 1038 (Wood, J., dissenting)).

Thus, while the Government "bears the burden of proving the constitutionality" of § 922(g)(1), *Bruen*, 597 U.S. at 24 (quoting *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000)), it can meet its burden, based upon this historical evidence, without delving into the individualized assessment Defendant requests. *See, e.g., United States v. Young*, No. 2:22-CR-20 JD, 2023 WL 8697936, at *2–3 (N.D. Ind. Dec. 15, 2023) (The "historical record shows strong support for the ability to categorically prohibit a defined group from possessing arms based on the legislature's assessment the group was dangerous or untrustworthy, without individual dangerousness assessments of group members."); *United States v. Barwicks*, No. 20-CR-00563, 2024 WL 1521473, at *13–14 (N.D. Ill. Apr. 8, 2024) (same); *United States v. Castillo*, No. 23 CR 113, 2025 WL 92565, at *6 (N.D. Ill. Jan. 14, 2025) (rejecting the defendant's as-applied challenge to § 922(g)(1) because the Seventh Circuit has never upheld an as-applied Second Amendment challenge to § 922(g)(1); the defendant offered no "support for his proposition that the statute's constitutionality turns on individualized assessments"; and "the historical evidence points to an opposite conclusion—laws in American colonies and 17th-century England suggest that felons, both violent and non-violent, were targeted for firearm dispossession.").[5]

---

[5] In her dissent in *Kanter v. Barr*, then Circuit Judge Barrett observed that § 922(g)(1), "would stand on solid footing if their categorical bans were tailored to serve the governments' undeniably compelling interest in protecting the public from gun violence. But their dispossession of all felons—both violent and nonviolent—is unconstitutional as applied to Kanter, who was convicted of mail fraud for falsely

In fact, although the Seventh Circuit has not yet definitively ruled on the issue,[6] several Circuit Courts have expressly rejected the notion that convicted felons whose predicate offenses were non-violent are exempt from § 922(g)(1)'s blanket ban on felons possessing firearms. In *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024), the Fourth Circuit identified a historical tradition of regulating gun possession by non-violent criminal offenders because "colonial-era offenders who committed non-violent hunting offenses were ordered to forfeit their firearms," and colonial governments disarmed individuals for non-violent offenses such as refusing to participate in the Church of England or refusing to declare an oath of loyalty. *Id.* at 705–706. Based upon this, the Fourth Circuit held that a person convicted of *any* felony "cannot make out a successful as-applied challenge to § 922(g)(1) unless the felony is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." *Id.* at 700.

---

representing that his company's therapeutic shoe inserts were Medicare-approved and billing Medicare accordingly." 919 F.3d 437, 451 (7th Cir. 2019). But the majority rejected that principle, observing that there "may be a case in the future that requires addressing whether any individual may successfully bring an as-applied challenge to the statute, but Kanter's is not that case." *Id.* at 450 n.12. Thus, neither the Supreme Court nor the Seventh Circuit has endorsed the individualized assessment Mr. Evans seeks.

[6] In *United States v. Carbajal-Flores*, 143 F.4th 877, 889 (7th Cir. 2025), the Seventh Circuit held that "district courts need not conduct individualized assessments of illegal aliens for purposes of § 922(g)(5)(A)" but expressed "no views on whether criminal defendants may lodge as-applied challenges to other provisions contained in § 922(g)'s various subsections." Although the court observed that "the class of persons disarmed under § 922(g)(1) is potentially overinclusive," i*d.* at *9, it neither conducted an historical review, nor provided any analysis on that question because the plaintiff in that case brought facial and as-applied challenges to § 922(g)(5)(A) (which the court wholly rejected). *Carbajal-Flores* thus merely identified, without resolving, the question Evans raises, and this Court remains convinced by the weight of circuit authority, discussed below, affirming the validity of § 922(g)(1)'s application to non-violent felons based upon long-standing regulatory practice in American law.

The Eighth Circuit has similarly determined that "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," and thus held that, even post-*Bruen* and *Rahimi*, "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 110 F.4th 1120, 1125, 1128 (8th Cir. 2024); *see also United States v. Peck*, 131 F.4th 629, 632 (8th Cir. 2025) (same).

The Tenth Circuit has likewise held that, post-*Bruen* and *Rahimi*, § 922(g) remains constitutional, whether as applied to felons who committed violent crimes or to felons who committed non-violent crimes. In *United States v. Warner*, 131 F.4th 1137 (10th Cir. 2025), the defendant argued that the Second Amendment prohibits the application of § 922(g)(1) to non-violent felons like himself, because non-violent felons are not dangerous and therefore retain the same right to keep and bear arms as do non-felons. Warner (like Mr. Evans here) emphasized that his felonies were non-violent and old and did not subject him to a significant term of imprisonment; he also argued that his felonies would today be treated only as misdemeanors under state law. *Id.* at 1147. The Tenth Circuit rejected the challenge, holding that, despite "the shifting Second Amendment landscape," § 922(g)(1) remains "constitutional as applied to non-violent felons." *Id.* at 1148–49. *See also Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) (even post-*Bruen* and *Rahimi*, "the Second Amendment doesn't prevent application of § 922(g)(1) to nonviolent offenders. . . .").

11

A few months ago, the Ninth Circuit joined these courts, holding, in *United States v. Duarte*, that "§ 922(g)(1) is constitutional as applied to non-violent felons." 137 F.4th 743, 750, 762 (9th Cir. 2025). In the absence of clear and contrary authority from the Seventh Circuit or the Supreme Court, the Court finds these cases persuasive.

Moreover, even if an as-applied challenge remains viable for some categories of felons, *Gay*, 98 F.4th 843, the record in this case demonstrates that Defendant would fall outside any such category.[7] Here the record confirms Mr. Evans' criminal history, including arrests for gambling, criminal trespass to vehicles, unlawful use of weapons, aggravated unlawful use of weapons, and possession of cannabis, and more importantly, convictions for burglary, reckless driving, and possession of a stolen vehicle. *See* [15]. Significantly, in connection with this last conviction, his bail was revoked and then he violated the terms of his probation three times in a 30-month period. *Id.* Finally, in July of 2024, he was charged with unlawful possession of ammunition by a felon and unlawful possession of a machinegun. *See* [8]. The charges stem from at least two instances in May of 2024 where Defendant allegedly fired multiple bullets from a machinegun: in the first instance, he "fired at least 33 bullets in approximately 1.5 seconds," spraying a car at a gas station, while bystanders "ducked for cover"; and, in the second, occurring a few weeks later,

---

[7] In dicta, the *Gay* court suggested that, even if convicted felons *could* assert a non-frivolous as-applied challenge, any such challenge mounted by Gay would fail because he was, by no means, a "law-abiding, responsible citizen," having been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison. 98 F.4th 843.

Defendant fired multiple bullets at individuals, injuring at least three people. [41] at 6. Additionally, as police were arresting Defendant, a firearm other than the machinegun described in the May shooting incidents "fell from defendant's person and was recovered by the officers." *Id.* at 6–7. In short, the record underscores Mr. Evans' "disrespect for legal norms of society." *Peck*, 131 F.4th at 632; *Jackson*, 110 F.4th at 1127; *Hunt*, 123 F.4th at 706. As in *Gay*, this Defendant "is not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." *Gay*, 98 F.4th 843. *See also Bruen*, 597 U.S. at 38–39 n.9 (affirming the presumptive constitutionality of shall-issue licensing regimes that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'") (quoting *Heller*, 554 U.S. at 635); *United States v. Dial*, No. 24-10732, 2024 WL 5103431, at *2 (11th Cir. Dec. 13, 2024) ("Even in *Bruen* the Supreme Court continued to describe the right to bear arms as extending only to 'law-abiding, responsible citizens'" and "*Rahimi* . . . does not change our analysis."). Thus, even if an as-applied challenge remains viable, it fails in this case on its merits.

## C.    Section 922(o)(1) Similarly Remains Constitutional Under *Bruen*

Binding precedent similarly forecloses any facial invalidation of § 922(o)(1). As explained above, *Bruen* sets forth the two-step, burden-shifting framework for analyzing Second Amendment claims, but does not undermine all prior Second Amendment jurisprudence. At step one, the Court must ask "whether 'the Second Amendment's plain text covers an individual's conduct' (such as possessing, receiving, or carrying a certain firearm within a particular place)." *United States v. Rush*, 130

13

F.4th 633, 638 (7th Cir. 2025). If it does, the Constitution "presumptively protects that conduct" and the Court must consider "whether the challenged regulation is 'consistent with the Nation's historical tradition of firearm regulation'" and the Government "bears the burden on the second step." *Id.* (quoting *Bruen*, 597 U.S. at 24).

To address Mr. Evans' challenge to § 922(o)(1), then, this Court first asks whether the Second Amendment invalidates statutory prohibitions on the possession of a machinegun. Under controlling case law, the plain answer is no.

The Second Amendment "protects the right of an ordinary, law-abiding citizen to possess a firearm 'in common use' for a lawful purpose like self-defense." *Rush*, 130 F.4th at 639 (quoting *Bruen*, 597 U.S. at 32; *Heller*, 554 U.S. at 627). Machineguns fall outside the scope of Second Amendment protections. *E.g., Heller*, 554 U.S. at 625 ("the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"); *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1193 (7th Cir. 2023), *cert. denied sub nom. Harrel v. Raoul*, 144 S. Ct. 2491 (2024) ("what exactly falls within the scope of 'bearable' Arms? Not machineguns"; the definition of 'bearable Arms' extends only to weapons in common use for a lawful purpose"). *See also Viramontes v. Cook Cnty.*, No. 24-1437, 2025 WL 1553896, at *1 (7th Cir. June 2, 2025) (recognizing that pre-*Bruen* precedent foreclosed any argument that a ban on machineguns violated the Second Amendment). And *Bruen* expressly stated that the current rulings said nothing "about the kinds of weapons that people may possess"

14

and did not alter "anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns." *Bruen,* 597 U.S. at 72 (Alito, J., concurring).

Even though the Seventh Circuit has not explicitly addressed the precise challenge raised by Mr. Evans, in *Rush* the court did address a defendant's Second Amendment challenge to his indictment and conviction for possession of an unregistered short-barreled rifle. And, tellingly, in reviewing the applicable legal standards, the court confirmed that machineguns fall outside the scope of Second Amendment protections. After discussing pre-*Bruen* precedent, including *United States v. Miller*, 307 U.S. 174 (1939), the court stated, "we understand *Miller*, and its subsequent treatment through *Bruen*," to say that "the type of weapon at issue is of critical importance. Weapons, like machine guns, that are 'not typically possessed by law-abiding citizens for lawful purposes' remain unprotected." 130 F.4th at 637 (quoting *Heller*, 554 U.S. at 625. *See also Bevis*, 85 F.4th at 1193 (noting that, although "a normal person can certainly pick up and carry a machinegun," making it "bearable" in the literal sense, machineguns nonetheless fall outside the scope of the Second Amendment) (citing *Heller*, 554 U.S. at 624, 627). These cases confirm that, even under *Bruen*, the civilian possession of machineguns is not protected by the plain text of the Second Amendment. As a result, Mr. Evans' challenge to § 922(o)(1) fails at step one of the *Bruen* framework.[8]

---

[8] Because Evans' challenge to § 922(o)(1) fails at step one of the *Bruen* framework, the Court need not separately consider whether the challenged regulation is "consistent with the Nation's historical tradition of firearm regulation." But, among other binding precedent, the Seventh Circuit's analysis in *Rush* would be dispositive at step two as well. *See Rush*, 130 F.4th at 639 (finding that reading the

Other Circuit Courts have similarly rejected post-*Bruen* challenges to § 922(o)(1)'s constitutionality. *See United States v. Brown*, 147 F.4th 687, 690 (6th Cir. 2025) ("it is well established that the historical scope of the Second Amendment does not extend to certain types of weapons—namely dangerous and unusual weapons—regardless of the manner in which they are carried or the specific characteristics of their bearers."); *United States v. Bridges*, No. 24-5874, 2025 WL 2250109, at *9 (6th Cir. Aug. 7, 2025) (rejecting facial and as-applied challenges to the constitutionality of § 922(o) because "machineguns are both dangerous and unusual—not weapons typically possessed by law-abiding citizens for lawful purposes" and "§ 922(o)'s ban on machinegun possession 'is consistent with the Nation's historical tradition of firearm regulation.'"); *United States v. Morgan*, No. 24-3141, 2025 WL 2502968, at *4 (10th Cir. Sept. 2, 2025) (rejecting a constitutional challenge to § 922(o) because the defendant failed to meet his "burden under *Bruen* step one to show that his machineguns are 'arms' protected by the Second Amendment—that they are 'in common use' today for self-defense.'") (quoting *Bruen*, 597 U.S. at 32).

## III.  <u>Conclusion</u>

The constitutional rights of lawful gun owners remain protected from Government overreach by the Second Amendment.  But such cherished protections

---

Second Amendment to protect the right of an ordinary, law-abiding citizen to possess a firearm 'in common use' for a lawful purpose like self-defense" "is supported by 'the historical tradition of prohibiting the carrying of dangerous and unusual weapons....'"); *id.* at 41–45 (reviewing and finding compelling the government's historical analogues for barrel-length regulations and regulations of dangerous and unusual weapons).

do not preclude reasonable restrictions upon the possession of firearms or ammunition by convicted felons, or upon the possession of machineguns, consistent with controlling prior precedent and the Nation's history and tradition regarding such regulations. Because § 922(g)(1) and § 922(o)(1) remain constitutional, Defendant's motion to dismiss the indictment [34] lacked merit, and this Court appropriately denied it.  *See* [55].

Dated:  January 13, 2026                    Entered:

John Robert Blakey
United States District Judge